MATTER OF M——D——S—— & L——G—— & W——D——C——

In EXCLUSION Proceedings

A-11135619
A-11132260
A-10367389

*Decided by Board December 12, 1958*

Resident alien—"Commuter"—Commuter status lost when alien has been out of employment for 6 months regardless of validity of Form I-151 as reentry document.

Regulation authorizing use of Form I-151 as reentry document for resident alien who has been absent from United States for period not exceeding one year does not cause any change in long-standing rule relating to commuters. Loss of commuter status occurs, as before, when the alien has been out of employment in the United States for more than 6 months. (Cf. *Matter of L——*, 4 I. & N. Dec. 454, and *Matter of H——O——*, 5 I. & N. Dec. 716.)

EXCLUDABLE: Act of 1952—Section 212(a)(20) (8 U.S.C. 1182(a)(20))—No visa, no passport.

## BEFORE THE BOARD

**Discussion:** The cases come forward on appeal from the District Directors at Detroit, Michigan, and at Buffalo, New York, from decisions rendered by two special inquiry officers on September 12, 1958, September 29, 1958, and October 6, 1958, directing that the applicants be admitted as Canadian resident commuters. The cases have been combined inasmuch as they involve a common set of facts and point of law.

The first case involves a native and national of Canada, 51 years old, widow, female, who was admitted to the United States for permanent residence at Detroit, Michigan, on November 26, 1957, upon presentation of a nonquota immigrant visa. Her status was adjusted on the date of her admission to that of the Canadian resident commuter and she has always maintained her residence in Riverside, Ontario, Canada. She commuted daily to Detroit, Michigan, where she was employed as a saleswoman by a jewelry firm until December 10, 1957, but has not been employed since that date. She testified that she stopped working on December 10, 1957, in order to be with her husband, then seriously ill, who passed away a

few days later. She then lost the services of her housekeeper upon whom she depended to look after her child while she was employed in Detroit and was not able to find another satisfactory housekeeper until a month before her application for admission. For this reason she was unable to seek and procure reemployment in the United States but she now has been offered employment by her former company or another prospective employer, both of whom have solicited her services. She claims that she has not abandoned her commuter status and that she is still entitled to the privileges reserved for a returning resident alien. She is in possession of a "temporary" Alien Registration Receipt Card which she used as a border-crossing identification card while commuting to work. She apparently had been issued this card when admitted for permanent residence and one of the conditions specified on the card limited its use to returning after absences not exceeding 6 months. Another Alien Registration Receipt Card was mailed to her at her Canadian address on December 8, 1957, but she has no knowledge of receiving this card.

The second case concerns a native and national of Canada, 26 years old, married, male, who was admitted to the United States for permanent residence on November 18, 1957, upon presentation of a nonquota immigrant visa. His status was adjusted immediately after admission to that of a Canadian resident commuter upon a showing that he was returning to his residence in Windsor, Ontario, Canada, and was destined to employment as a salesman for a department store in Detroit, Michigan. He was laid off on December 28, 1957, and since that date has made constant and almost continuous efforts to find other employment in the United States without success. This appears to have been due to the widespread unemployment in Detroit since the spring of 1958. In the meantime he did odd jobs in Canada and availed himself of unemployment benefits to support his family. He has found that an opening may be available again with his former employer in the United States and seeks to reenter as a commuter despite the fact that he has not been employed for almost 9 months. He is in possession of an Alien Registration Receipt Card, Form I-151 (edition of September 11, 1956), which serves as a border-crossing identification card.

The third case relates to a native and national of Canada, 21 years old, married, male, who was admitted to the United States on September 10, 1957, as a nonquota immigrant. He retained residence in Canada and was employed in Buffalo, New York, from October 12, 1957, until March 14, 1958, as a production man for General Motors. At the time of his employment he obtained a Form I-151, Alien Registration Receipt Card, which serves as a resident alien's border-crossing card. During his employment he was recognized as a commuter. However, he was laid off on March 14, 1958, be-

cause of lack of work and has sought employment in the United States on various occasions since then without success. He now desires to seek work in the United States. He testified that about 3 months prior to his application for admission he desired to move to this country from Canada but his wife was then pregnant and was unable to move. Since that time she has had a child. The applicant intends to establish actual residence in this country within a short time and intends to have his wife and child join him as soon as they are able to do so.

The three cases have a common set of facts. In each case the alien was admitted for permanent residence upon presentation of a non-quota immigrant visa, their status was immediately adjusted to that of a commuter, they were employed in the United States while residing in Canada, and in each case the alien has been out of work for more than 6 months. It appears to be the Service contention that the so-called commuter category is available only if the person has not been unemployed in the United States for 6 months and that beyond that period they are no longer eligible for the commuter classification or for treatment as returning resident aliens. The special inquiry officer, however, has equated the status of the aliens with that of permanent resident aliens and in view of the extension of the period of validity of the Form I-151 to a period of one year, has concluded that the aliens are eligible to return in possession of Forms I-151 as returning residents.

The applicants belong to a class known as commuters, namely, aliens who are lawfully admitted for permanent residence but continue to retain their place of residence in foreign contiguous territory while commuting to their place of employment in this country. This anomalous class of immigrants known as "commuter" is fully treated in *Matter of L——*, 4 I. & N. Dec. 454. After the enactment of the Immigration and Nationality Act, since that act was silent with regard to commuters, it was again necessary to consider the question and it was decided in *Matter of H——O——*, 5 I. & N. Dec. 716, that this long-standing practice had not been disturbed by the enactment of the new act.

In numerous cities along the international boundary lines to the north and to the south of the United States live many aliens who each day journey to their jobs on the American side of the border and at the end of the same day usually return to their homes on the other side of the frontier. At the same time there exists a somewhat smaller daily movement of Americans to and from jobs in Canada and Mexico. This flow of aliens across the frontier posed no administrative difficulty until the passage of the Immigration Act of 1924 which laid down universal rules for documentation and classified all arriving aliens as immigrants unless they fell into

certain designated groups described as nonimmigrants. Until April 1, 1927, they were permitted to enter as border crossers without having been admitted for permanent residence. However, on that date the policy was changed by the issuance of General Order No. 86, which provided that such aliens entering the United States subsequent to June 30, 1924, to engage in employment or to seek employment would not be considered as visitors for business or pleasure but as aliens of the immigrant class and granted them a reasonable period of time not to exceed 6 months from June 1, 1927, within which to obtain immigration visas if they had been enjoying the border-crossing privilege on April 1, 1927. The legality of General Order No. 86 was sustained in the case of *Karnuth* v. *United States ex rel. Albro*, 279 U.S. 231 (1929). Although General Order No. 86 was later cancelled, the rights accrued thereunder were not cancelled and subsequent regulations provided that alien commuters should be considered aliens of the immigrant class (former 8 CFR 110.6, previously paragraph 1, subdivision C of Rule 3, Immigration Laws and Rules of January 1, 1930). The adoption of the policy found in General Order No. 86 aroused controversy and apprehension along the Canadian and Mexican borders and fears that the means of livelihood of the commuter would be jeopardized if access to their jobs were shut. Representations on high diplomatic levels were made and out of these discussions there eventually emerged an amplification of our policy which permitted alien commuters to establish lawful admission into the United States for permanent residence, then furnished them with border-crossing identification cards and permitted them to cross international boundary en route to and from their employment (former 8 CFR 166). A memorandum from the Commissioner General (File 55499/537–A, November 16, 1927), in answer to questions raised by General Order No. 86, set forth the policy that an alien residing in foreign contiguous territory and enjoying the border-crossing privilege abandons such right when he discontinues his employment in the United States and does not renew same within a period of 6 months.

Thus, it has been held that an alien of the immigrant commuter class who has been out of employment in the United States for 6 months is, notwithstanding temporary entries in the meanwhile for other than employment purposes, deemed to have abandoned his status of a permanent resident in the United States and thereafter, if he seeks to reenter, is not admissible without again qualifying for admission as a permanent resident (*Matter of L——*, 4 I. & N. Dec. 456). The salient points to be considered in determining abandonment of commuter status are intention and loss of employment. It has been held that a commuter remains entitled to such classification, notwithstanding an absence of 6 months from this country and

interruption of his work for that period, if his employment, job or position has not been lost and if the interruption was due to uncontrollable circumstances, such as serious illness, pregnancy, or a disabling injury, such as a broken arm, in which case the 6-month period tolls until the commuter is again employable.[1]

A commuter who has been legally admitted as an immigrant is entitled to receive a border-crossing identification card so long as he continues in the status of a commuter (*Matter of H——O——*, 5 I. & N. Dec. 718). The commuter situation manifestly does not fit into any precise category found in the immigration statutes. The status is an artificial one, predicated upon good international relations maintained and cherished between friendly neighbors. As examples of the anomalous situation of the commuter, he cannot claim naturalization benefits since the naturalization statute by definition equates residence with domicile rather than an assimilated status (*Petition of Wright*, 42 Supp. 306; *In re Barron*, 26 F.2d 106 (1928); *Petition of Correa*, 79 F. Supp. 265 (1948)). It has also been held that a commuter is not a resident of the United States under the Selective Service regulations (32 CFR 611.13(a)(6), 611.13(b)(7), (1944)), because he did not reside in the United States for the required period of 3 months. On the other hand, an alien who has the status of a commuter must notify the Commissioner of his current address in compliance with section 35 of the Alien Registration Act of 1940, as amended, and regulations issued thereunder.

However, as part and parcel of this policy has been the holding that the commuter who has been out of employment in the United States for 6 months is, notwithstanding temporary entries in the meanwhile for other than employment purposes, deemed to have abandoned his status of a permanent resident in the United States and thereafter, if he seeks to reenter, is not admissible without again qualifying for admission as a permanent resident. Thus, in *Matter of D——C——*, 3 I. & N. Dec. 519 (1949), the alien, a native and citizen of Canada, was admitted to the United States for permanent residence on May 25, 1948, and on the same date was issued a resident alien's border-crossing identification card, the validity of which expired on May 22, 1949. He returned to Canada on the same date of his admission and had no intention of residing here and never had employment here but merely made several temporary visits always with the intention of returning to his home in Canada. On December 13, 1948, during the period of validity of his resident alien's border-crossing identification card, he sought to enter for the purpose of seeking employment. His possession of the unexpired resident alien's border-crossing card did not avail him when seeking

---

[1] *Matter of D——C——*, 3 I. & N. Dec. 526, 527, Editor's note.

admission as an immigrant because he was not considered as a returning legal resident within the purview of section 4(b) of the Immigration Act of 1924. It is to be noted that in that case the applicant was not in fact a commuter because he had never been employed in this country and had not been employed for a period of more than 6 months prior to his application for admission with the border-crossing card. Thus, it would appear that a commuter is entitled to readmission as a returning resident, but that the primary consideration is that he maintain the status of a commuter. As a corollary requirement, he must also comply with the conditions controlling the use of border-crossing cards.

In the instant cases, the applicants had been employed in the United States for periods of approximately 2 weeks, 5 weeks and 5 months, respectively. Their jobs were then terminated. Since that time all of the applicants have been employable for more than 6 months but have been unable to obtain work in the United States during that period. At least one has done odd jobs in Canada and two have no assurance of resuming their jobs.

The circumstances presented here differ from those in *Matter of L——*, 4 I. & N. Dec. 454. There the applicant had been steadily employed in the United States by one firm for 25 years, was disabled by illness for 5 months and sought entry into the United States 6 months and 1 week after he was absent from his job to resume his employment. In view of the fact that there was no evident intention to abandon commuter status, that he had never lost his job which was being held open and was available to him during the period of his absence, that the illness tolled the 6-month period until he was again employable, he was admitted as a returning resident. In the cases before us, it is evident that the previous employment in the United States had been lost and were not available during the 6 months or more of unemployment. Under the historical policy set out above, they are no longer to be regarded as possessing the status of commuters and the fact that their resident alien's border-crossing card or its substitute, the Alien Registration Receipt Card, Form I-151, may still be valid does not avail the applicants inasmuch as they are not eligible for the commuter status. The appeals of the district directors will be sustained and exclusion will be ordered.

**Order:** It is ordered that the appeals of the district directors from the decisions of the special inquiry officers be sustained and that the aliens be excluded on the documentary grounds set forth in the caption.